UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TWANN CAMPBELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-2232-B |
| | § | |
| JOSUE F. PEÑA, THE CITY OF | § | |
| CEDAR HILL, TEXAS, OFFICER | § | |
| MARTINEZ, METHODIST | § | |
| HEALTH SYSTEM OF DALLAS | § | |
| POLICE DEPARTMENT, and | § | |
| METHODIST HOSPITALS OF | § | |
| DALLAS d/b/a METHODIST | § | |
| HEALTH SYSTEM, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants the City of Cedar Hill ("Cedar Hill") and Josue F. Peña (collectively, "City Defendants")'s Motion to Dismiss Under Rule 12(b)(6) (Doc. 5). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the City Defendants' Motion.

I.

BACKGROUND

This is an excessive force case. In September 2021, Campbell was driving in Cedar Hill, Texas, when Peña, a police officer, pulled him over. Doc. 1-3, Pet. ¶ 12. After questioning Campbell, Peña ordered Campbell out of his vehicle to conduct a field sobriety test; Campbell complied. *Id.* Upon Campbell's completion of the field sobriety test, Peña placed Campbell under arrest, although Peña allegedly failed to inform him of the offense he committed or read Campbell

his *Miranda* rights. *Id*. ¶¶ 12, 16. Peña then placed Campbell in the back of his patrol vehicle, and the two drove to "Methodist Charlton Medical Center to undergo a blood alcohol test." *Id*. ¶ 13. Once they arrived, Peña and Campbell were escorted into a hallway; Campbell was apparently still in handcuffs at this time. *Id*. ¶¶ 13–14.

While Campbell and Peña were in the hospital hallway, Peña asked "whether [Campbell] would like to sit down" three separate times. *Id*. ¶ 14. Campbell "politely" indicated that he would not like to sit down each time. *Id*. Then, "[i]n a sudden and unexcepted act of violence, . . . Peña grabbed . . . Campbell's left arm in an effort to force him to sit down [in a chair]." *Id*. Campbell alleges that he was "surprised by [Peña's] unexpected and quick movements, [and] attempted to free himself." *Id*. Thereafter, Peña and another police officer forcibly sat Campbell down in the chair. *Id*.

Campbell claims that his leg fractured in multiple areas as a result of this incident, which required corrective surgery to fix. *Id*. ¶¶ 14–16. He thus initiated the present litigation in Texas state court on September 14, 2023, naming Cedar Hill and Peña, among others, as defendants. *See id.* ¶¶ 3–4. As against the Cedar Hill, Campbell asserts a cause of action under 42 U.S.C. § 1983 and a claim for negligence; he also seeks to hold Cedar Hill liable for Peña's conduct under a theory of respondeat superior. *Id*. ¶¶ 17–24. As against Peña, Campbell brings a § 1983 claim for excessive use of force.[1]

On October 6, 2023, this case was removed to federal court on the basis of federal question jurisdiction. Doc. 1, Notice of Removal. After removal, the City Defendants filed the present

---

[1] The petition also purports to assert a claim under the Texas Tort Claims Act against all defendants. Doc. 1-3, Pet. ¶ 17. However, "[t]he TTCA does not create a cause of action but, instead, waives immunity for certain suits against Texas governmental entities." *Johnson v. MHMR Auth. of Brazos Valley*, No. CV H-23-3448, 2023 WL 8630064, at *5 (S.D. Tex. Dec. 13, 2023).

Motion to Dismiss (Doc. 5). They argue that the claims asserted against them should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Doc. 5, Mot., 2–3. The City Defendants' Motion is briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

## III.

## ANALYSIS

Campbell asserts three claims against Cedar Hill and one claim against Peña. As against Cedar Hill, Campbell brings two state-law claims for negligence and respondeat superior, and a federal-law claim for violations of 42 U.S.C. § 1983. Doc. 1-3, Pet. ¶¶ 18–24. Campbell's two state-law claims against Cedar Hill are purportedly brought under the Texas Tort Claims Act ("TTCA")'s limited waiver of governmental immunity.[2] *Id.* ¶ 17. With respect to his negligence claim, Campbell alleges that Cedar Hill breached its duty to train and supervise Peña regarding the reasonable use of force, and that this breach proximately caused Campbell's injuries. *Id.* ¶¶ 18–21. With respect to his respondeat superior claim, Campbell alleges that Cedar Hill is "responsible for all damages resulting from the negligent acts and/or omissions" of its employee, Peña. *Id.* ¶ 22. Like his negligence claim, Campbell's § 1983 claim against Cedar Hill is also premised on Cedar Hill's alleged failure to adequately train and supervise Peña regarding the reasonable use of force. *Id.* ¶ 23.[3] In the context of his § 1983 claim, Campbell argues that Cedar Hill's failure to train and supervise Peña ultimately caused Campbell to be deprived of his federal rights. *Id.* As against Peña, Campbell brings a § 1983 claim, alleging that Peña's use of force at the hospital violated Campbell's clearly established federal rights. *Id.* ¶ 24.

---

[2] *See Harris Cnty. v. Deary*, No. 01-23-00516-CV, 2024 WL 234755, at *3 (Tex. App.—Houston [1st Dist.] Jan. 23, 2024, no pet.) ("A plaintiff may assert a claim against a governmental unit based on its employee's conduct under the doctrine of respondeat superior. Or, a plaintiff may assert a claim against the governmental unit for its own conduct relating to the negligent employee, like a claim for negligent hiring, negligent training, or negligent supervision." (citations omitted)).

[3] The two claims, however, are distinct in that negligence claim is brought pursuant to the TTCA's waiver of immunity and the § 1983 claim is brought pursuant to a federal waiver of governmental immunity. As such, the various provisions of TCCA—including the intentional tort bar—which apply to the negligence claim are inapplicable to that claim. Further, to prevail on his § 1983 failure-to-train and failure-to-supervise claim, Campbell will need to make a greater showing than would be required for his negligence claim

The City Defendants now move to dismiss each of the claims asserted against them under Rule 12(b)(6).[4] *See* Doc. 5, Mot. The Court concludes that each claim asserted against Cedar Hill either fails as a matter of law or is improperly pled. It thus grants the City Defendants' Motion as to the negligence, respondeat superior, and § 1983 claims against Cedar Hill. However, Campbell has pleaded sufficient facts in support of his § 1983 claim against Peña to overcome the defense of qualified immunity. Thus, the Court denies the City Defendants' motion as to that claim.

A.   *Claims Against Cedar Hill*

The City Defendants move to dismiss the negligence, respondeat superior, and § 1983 claims against Cedar Hill under Rule 12(b)(6). *See* Doc. 5, Mot., 9–14. They argue that the two state law claims for negligence and respondeat superior brought against Cedar Hill may not proceed under the TTCA's intentional-tort bar. *Id*. at 9–12. And with respect to the § 1983 claim against Cedar Hill, the City Defendants argue that Campbell failed to plead facts which plausibly establish that Cedar Hill may be held liable under *Monell v. New York City Dept. of Social Services*. *Id*. at 12–14. The Court concludes that each claim fails.

1.   State Law Claims

Campbell asserts two state-law tort claims against Cedar Hill under the TTCA's waiver of immunity: (1) negligence, and (2) respondeat superior. *See* Doc. 1-3, Pet., ¶¶ 18–22. According to Campbell, Cedar Hill itself was negligent in failing to train and supervise Peña. *Id*. ¶ 18–21. Had Cedar Hill properly trained Peña regarding the proper use of force, the argument goes, Peña would not have used excessive force at the hospital and Campbell would not have been injured. *Id*.

---

[4] City Defendants also have moved to dismiss "any . . . tort claims brought against Officer Peña in the instant case" under the TTCA's Election of Remedies Provision. Doc. 5, Mot., 5. On the Court's reading of the Petition, no tort claim is asserted against Peña.

Separately, Campbell alleges that Cedar Hill is vicariously liable for Peña's "negligent acts and/or omissions" committed in the scope of his employment under a theory of respondeat superior. *Id.* ¶ 22.

City Defendants argue that neither claim can proceed under the TTCA. *See* Doc. 5, Mot., 9–12. According to the City Defendants, while the TTCA waives a governmental unit's immunity in certain instances, it expressly preserves such immunity for intentional torts. *Id.* And though negligence and respondeat superior are not intentional torts, City Defendants argue that such claims are nevertheless subject to the intentional-tort bar in this case because the underlying factual allegations in support of these claims—i.e., the use of force at the hospital—sound in battery. *Id.* Campbell does not offer any argument in response. *See generally* Doc. 7, Resp.

The Court agrees that Campbell's claims for negligence and respondeat superior against Cedar Hill may not proceed under the TTCA.

"Under the common-law doctrine of sovereign immunity, a municipality is immune from tort liability for its own acts or the acts of its agents unless the Texas Tort Claims Act waives immunity." *City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex. 1998). "The TTCA waives immunity for claims for acts of negligence arising out of a governmental employee's negligent operation or use of a motor vehicle *but does not waive immunity for any intentional tort, including battery.*" *Ector Cnty. v. Grace*, 661 S.W.3d 659, 665 (Tex. App.—El Paso 2023, no pet.) (emphasis added); *see* TEX. CIV. PRAC. & REM. CODE § 101.057(2). The TTCA's intentional-tort bar cannot be circumvented merely by "couching [a] claim in terms of negligence." *Harris Cnty., v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Aguirre v. City of San Antonio*, 995 F.3d 395, 422 (5th Cir. 2021) ("[I]ntentional conduct, no matter how it is pled, falls under the TTCA's sovereign immunity waiver exception."). Instead, the question is whether the

gravamen of the claim against the governmental unit "sounds in negligence or an intentional tort." *Grace*, 661 S.W.3d at 665–66; *see City of Watauga v. Gordon*, 434 S.W.3d 586, 587 (Tex. 2014); *Saenz v. City of El Paso*, 637 F. App'x 828, 830–31 (5th Cir. 2016) (unpublished).

Here, the gravamen of Campbell's claim is that police officers "used excessive . . . force, including forcibly grabbing and pushing the Plaintiff down into the chair, and/or [their] . . . failure to restrain . . . [each other] from using excessive force." Doc. 1-3, Pet., ¶¶ 20, 24. "Claims of excessive force in the context of a lawful arrest arise out of a battery rather than negligence, whether the excessive force was intended or not." *Gordon*, 434 S.W.3d at 593. And though Campbell couches his claims against Cedar Hill in terms of negligence and respondeat superior, the intentional-tort bar "cannot be circumvented merely by alleging that the governmental unit was negligent in supervising the employee-tortfeasor." *Cabazos*, 177 S.W.3d at 109; *Saenz*, 637 F. App'x at 831 ("A plaintiff may not maintain a negligence claim under the TTCA where the claim is based on 'the same conduct' as the intentional tort claim." (citations omitted)). Indeed, "Texas courts have repeatedly rejected the argument that intentional conduct by police that also forms the basis of excessive force claims . . . can give rise to cognizable claims under the [TTCA]." *Aguirre*, 995 F.3d at 422; *see also Cabazos*, 177 S.W.3d at 111 ("If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA."). Because Campbell "alleges no distinct facts aside from those that formed the basis of the excessive force claim," the Court concludes his negligence and respondeat superior claims fall within the TTCA's intentional-tort bar. *Saenz*, 637 F. App'x at 831; *see Martinez v. Zapata Cnty.*, No. 5:23-CV-00050, 2024 WL 1315898, at *6 (S.D. Tex. Mar. 27, 2024) ("Plaintiff's claims of negligent failure to train and negligent supervision are based on the same conduct as his assault, battery, and false imprisonment claims. . . . Plaintiff's

allegations make clear that no 'distinct facts' support their negligence and intentional-tort claims, placing the negligence claims 'outside the TTCA's 'limited waiver of sovereign immunity.'" (quoting *Saenz*, 637 F. App'x 828, 831 (5th Cir. 2016)).[5]

In sum, Campbell's negligence and respondeat superior claim against Cedar Hill are foreclosed by the TTCA's intentional-tort bar. Both claims rest solely on the underlying conduct allegedly committed by Peña that amounts to an intentional tort. Cedar Hill retains its immunity from such claims. Thus, the Court **GRANTS** City Defendants' Motion as to these claims.

2.  § 1983 Claim

Campbell also asserts a § 1983 claim against Cedar Hill. Doc. 1-3, Pet., ¶ 23. Campbell appears to argue that Cedar Hill's failure to train and supervise Peña regarding the permissible use of force ultimately resulted in a deprivation of Campbell's federal rights when Peña forced him into a chair at the hospital. Doc. 7, Resp., 6–8. Cedar Hill contends that Campbell failed to allege an official policy that was the moving force behind Peña's alleged constitutional violations and thus it may not be held liable for Campbell's injuries in a § 1983 action. Doc. 5, Mot., 12–17. The Court agrees.

Section 1983 imposes civil liability on "[e]very person who, under color of [state law] . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States] . . . ." 42 U.S.C. § 1983. In *Monell v. New York City Dept. of Social Services*, the Supreme Court held that "Congress *did* intend municipalities and other local government units to be included among those

---

[5] Moreover, "[t]he TTCA is also not the appropriate vehicle for claims of negligent failure to train or supervise." *Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009); *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001).

persons to whom § 1983 applies." 436 U.S. 658, 690 (1978) (emphasis in original); *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) ("[M]unicipal entities like the school district qualify as 'persons.'" (citation omitted)). However, at the same time, the Court "recognized a limitation on this liability and concluded that a municipality cannot be made liable by application of the doctrine of *respondeat superior*." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). Instead, municipalities incur liability under § 1983 "when, and only when, their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988).

Thus, to prevail against a municipality under § 1983, "a plaintiff must show that an official policy promulgated by a municipal policymaker was the moving force behind the violation of a constitutional right." *Henderson v. Harris Cnty.*, 51 F.4th 125, 130 (5th Cir. 2022). An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citation omitted).

In this case, Campbell argues that Cedar Hill failed to train and supervise Peña. *See* Doc. 7, Resp., 6. "The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights . . . ." *Peterson*, 588 F.3d at 849. "[I]n order to state a claim for *Monell* liability for failure to train or supervise, plaintiffs must allege that (1) the municipality's training or supervisory policies or practices were inadequate, (2) the municipality was deliberately indifferent in adopting those polices or practices, and (3) the policies or practices caused plaintiffs' constitutional injuries." *Washington v. Smith*, 639 F. Supp. 3d 625, 652 (E.D. La. 2022); *Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021).

Here, Campbell has failed to plead the first two elements of his *Monell* claim against Cedar Hill.

To begin, Campbell has not properly alleged that Cedar Hill's training or supervisory policies were inadequate. To establish that Cedar Hill's policies were inadequate, Campbell "must allege with specificity how a particular . . . program is defective." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)); *see also Doe v. Dallas Indep. Sch. Dist.*, 194 F. Supp. 3d 551, 563 (N.D. Tex. 2016) (Boyle, J.); *Ayon v. Austin Indep. Sch. Dist.*, No. 1:19-CV-586-RP, 2020 WL 1536383, at *6 (W.D. Tex. Mar. 31, 2020). In his Petition, Campbell merely alleges that Cedar Hill's policies and practices were deficient. *See* Doc. 1-3, Pet., ¶¶ 18–24. But he fails to allege any facts regarding Cedar Hill's training or supervisory policies such that the Court could plausibly conclude that they were inadequate, as Campbell claims. Absent such factual allegations, Johnson failed to plead the first element of his claim. *See Dallas Indep. Sch. Dist.*, 194 F. Supp. 3d at 563; *Ayon*, 2020 WL 1536383, at *6.

Campbell has also not plausibly pleaded the second element of his failure to train/supervise claim—deliberate indifference. *See Washington*, 639 F. Supp. 3d at 652. There are two ways to establish deliberate inference. *See Littell*, 894 F.3d at 624. First, a plaintiff may allege a pattern of constitutional violations committed by municipal employees such that "the need for further training must have been plainly obvious to the policymakers." *Id.* at 624 (citations omitted). Second, in the absence of such a pattern, a plaintiff may allege "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997) (citations omitted). The single-incident exception applies

where "the risk of constitutional violations was or should have been an obvious or highly predictable consequence of the alleged training inadequacy." *Littell*, 894 F.3d at 624 (quotations and citation omitted).

Here, Campbell has only alleged a single incident occurred, *see* Doc. 1-3, Pet., so the first method of providing deliberate indifference is inapplicable. The single incident exception is a narrow one and is "generally reserved . . . for cases in which the policymaker provides no training whatsoever with respect to the relevant constitutional duty as opposed to training that is inadequate only as to the particular conduct that gave rise to the plaintiff's injury." *Littell*, 894 F.3d at 625 n.5 (citations omitted). The allegations in the Petition do not demonstrate that the single incident exception is applicable because although Campbell has alleged that Cedar Hill's policies and training were not "adequate," he does not claim that Cedar Hill lacked *any* training regarding the permissible use of force. Doc. 1-3, Pet., ¶ 23; *see Littell*, 894 F.3d at 625.

In sum, Campbell has failed to allege facts plausibly suggesting that Cedar Hill may be held liable in this § 1983 action under Monell. Court **GRANTS** City Defendant's Motion as to Campbell's § 1983 claim against Cedar Hill and **DISMISSES** that claim **WITHOUT PREJUDICE**.

B.     *Claim Against Pena*

Campbell brings a single claim against Peña for excessive use of force under 42 U.S.C. § 1983. Doc. 1-3, Pet., 23–24. The City Defendants argue that the facts alleged in support of the § 1983 claim against Peña are insufficient to overcome the defense of qualified immunity. *See* Doc. 5, Mot., 5–9. The Court disagrees.

"Courts have historically conducted a two-pronged analysis to determine whether a defendant is entitled to qualified immunity." *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309,

329–30 (E.D. Tex. 2021) "[A] court must determine whether a 'constitutional right would have been violated on the facts alleged.'" *Id.* (quoting *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). "[I]f a constitutional right was violated, a court then determines whether 'the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Flores*, 381 F.3d at 395).

The City Defendants argue that Campbell failed to plausibly plead that Peña violated Campbell's constitutional rights. Doc. 5, Mot., 5–7. Alternatively, the City Defendants contend that Peña is entitled to qualified immunity because his conduct was objectively reasonable in light of clearly established law. *Id.* at 7–9. The Court addresses each argument in turn.

1. Violation of Constitutional Right

Campbell claims that Peña violated his federal rights by using excessive force during the incident at the hospital. Doc. 1-3, Pet., ¶ 24. Excessive force claims "are governed by the Fourth Amendment, which protects the right to be free from excessive force during a seizure." *Perkins v. Hart*, No. 22-30456, 2023 WL 8274477, at *6 (5th Cir. Nov. 30, 2023). To state a claim for excessive use of force, Campbell must allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (citation omitted).

Peña only argues that the pleadings fail to show the third element—that his use of force was objectively unreasonable. Doc. 5, Mot., 6. The Court disagrees.

In *Graham v. Connor*, 490 U.S. 386, 396 (1989), "[t]he Supreme Court . . . outlined three factors that inform the reasonableness of an officer's use of force: '(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3)

whether the suspect was actively resisting arrest or attempting to evade arrest by flight.'" *Sligh v. City of Conroe*, 87 F.4th 290, 298 (5th Cir. 2023) (quoting *Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020)).

Here, each factor indicates that Peña's use of force was unreasonable. First, the Court considers the severity of the offense. *See id.* Campbell alleges that he was operating a motor vehicle when Peña pulled him over and conducted a field sobriety test. Doc. 1-3, Mot., ¶ 12. Following the field sobriety test, Peña arrested Campbell, although Peña did not "indicat[e] whether [Campbell] failed the test." *Id.* The allegations suggest that Campbell was arrested for "Driving While Intoxicated," which is a misdemeanor. TEX. PENAL CODE § 49.04(b)–(d). Misdemeanors are generally considered to be "minor offense[s] militating against the use of force." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017).

Second, the allegations do not suggest that Campbell "posed an immediate threat to the safety of officers or others." *Sligh*, 87 F.4th at 298 (citations omitted). Immediately prior to Peña's alleged use of force, Campbell was handcuffed and standing still in the hallway of a hospital. *See* Doc. 1-3, Pet., ¶¶ 13–14. The Court cannot say that Campbell posed any threat under these circumstances.

The third factor presents a closer question. Campbell alleges that, while he and Peña were in the hospital hallway, Peña asked "whether [Campbell] would like to sit down" three separate times. *Id.* ¶ 14. Campbell "politely" indicated that he would not like to sit down each time. Then, "[i]n a sudden and unexcepted act of violence, [Peña] grabbed . . . Campbell's left arm in an effort to force him to sit down." *Id.* Campbell alleges that he was "surprised by [Peña's] unexpected and quick movements, [and] attempted to free himself." *Id.* Thereafter, Peña and another police officer forcibly sat Campbell down in a chair, which apparently was the cause of his injuries. *Id.*

Peña argues that Campbell's attempt to free himself constitutes resisting arrest and that his use of force was not objectively unreasonable on this basis alone. Doc. 5, Mot., 6–7. This point is well taken. But the third *Graham* factor is not simply a binary, yes-he-resisted or no-he-didn't-resist determination. *See Curran v. Aleshire*, 800 F.3d 656, 661 (5th Cir. 2015); *see also Timpa v. Dillard*, 20 F.4th 1020, 1034 (5th Cir. 2021). As the Fifth Circuit has explained, there is a distinction between "active resistance" and "passive resistance"—while active resistance may support an officer's use of force, "where an individual's conduct amounts to mere 'passive resistance,' use of force is not justified." *Trammell*, 868 F.3d at 341; *Bartlett*, 981 F.3d at 335 ("For an officer's force to be reasonable, it must be commensurate with the suspect's level of contemporaneous, *active resistance*." (emphasis added)). And, as particularly relevant here, the Fifth Circuit has found that, where a plaintiff is neither aggressive towards an officer nor attempts to flee, a plaintiff's attempt to remove himself from an officer's grasp constitutes the kind of passive resistance which would not support the use of force. *See, e.g.*, *Trammell*, 868 F.3d at 341; *Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir. 2013) ("[A]ccording to [plaintiff] the only resistance he offered was pulling his arm out of [the officer's] grasp; he alleges several officers then forced him to the ground without resistance on his part. Viewing the facts of this record in the light most favorable to [plaintiff], any reasonable officer in [the officer's] place would have recognized [the officer's] conduct was objectively unreasonable under the *Graham* factors."). Here, Campbell was arrested for a minor offense and handcuffed; he had not disobeyed any of Peña's commands or acted violently towards Peña (or anyone else); and there is no indication that Campbell ever attempted to flee. *See* Doc. 1-3, Pet., ¶¶ 12–14. Moreover, Campbell's resistance to Peña's grabbing his arm appears to have been minor and short-lived. *See id.* ¶ 14. Under these alleged circumstances, that Campbell initially attempted to remove himself from Peña's unexpected—and apparently unprovoked—grasp does

not support the use and degree of force alleged. *See Trammell*, 868 F.3d at 341; *Ramirez*, 716 F.3d at 378. Drawing all reasonable inferences in Campbell's favor, the Court finds that Campbell plausibly established that the third factor weighs in his favor, notwithstanding his initial resistance.

In sum, all three factors suggest that Peña's use of force was unreasonable. Thus, Campbell has established the third element of his excessive force claim. As the first two elements of that claim are undisputed, the Court concludes that Campbell plausibly alleged a violation of his right to be free from unreasonable seizures.

### 2.     Clearly Established Law

To prevail on his excessive force claim, Campbell must do more than show his constitutional rights were violated. *See Polnac*, 555 F. Supp. 3d at 329–30. He must further show that Peña's use of force violated clearly established law. *See id*. Campbell has done so here.

"[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations omitted). For this reason, "[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (per curiam)).

"In order for a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Trammell*, 868 F.3d at 339 (citations and alterations omitted). In excessive force cases, an officers' "conduct violates a clearly established right when there is 'controlling authority . . . that defines the contours of the right in question with a high degree of particularity.'" *Aguirre v. City of San Antonio*, 995 F.3d 395, 415 (5th Cir. 2021) (alterations in original) (quoting *Linicomn v. Hill*, 902

F.3d 529, 538 (5th Cir. 2018)). "Although this does not mean that a case directly on point is required, existing precedent must have placed the statutory or constitutional question beyond debate." *Trammell*, 868 F.3d at 339 (citation omitted). That said, the defense of qualified immunity can be denied even if there are "notable factual distinctions between the precedents relied on . . . so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Timpa v. Dillard*, 20 F.4th 1020, 1034 (5th Cir. 2021) (alterations in original) (quoting *Hope*, 536 U.S. at 741).

The Court concludes that Peña's alleged conduct violates clearly established law in light of the Fifth Circuit's decisions in *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000) and *Trammell v. Fruge*, 868 F.3d 332 (5th Cir. 2017). In *Goodson*, a police officer ordered plaintiff to put his hands on the officer's vehicle as plaintiff was walking into a restaurant. 202 F.3d at 733–34. Plaintiff asked the officer whether he was being placed under arrest; in response, the officer stated that plaintiff "was being detained and to put his hands on the car." *Id*. at 734. However, "[b]efore [plaintiff] could comply, . . . [the officer] grabbed his arm." *Id*. Plaintiff immediately "pulled his arm away from [the officer] in surprise and stumbled back in an attempt to regain his balance and maintain a little distance from the police officers." *Id*. Two police officers proceeded to tackle plaintiff to the ground, and plaintiff broke his shoulder as a result. *Id*. The Fifth Circuit concluded that, on the basis of these facts, there was a genuine issue of fact "as to the objective reasonableness of the force used." *Id*. at 740.

Relying on *Goodson*, the Fifth Circuit in *Trammell* found that a police officer violated clearly established law under similar circumstances. 868 F.3d at 343. The officer in that case, believing he had probable cause to effectuate an arrest for public intoxication, "grabbed [plaintiff's] right arm as he told [plaintiff] to put his hands behind his back." *Id*. at 337. Plaintiff then "pulled back" from

the officer's grasp. *Id.* Thereafter, a second police officer "grabbed [plaintiff's] left arm, but [plaintiff] again pulled away." *Id.* At this point, the officers tackled Plaintiff to the ground, causing severe injuries. *Id.* The district court granted summary judgment to the officers on qualified immunity grounds, and the Fifth Circuit reversed, explaining that the law was "clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp." *Id.* at 343.

The Court thinks that the foregoing is sufficient to have put Peña on fair notice that his conduct, as alleged in the complaint, was objectively unreasonable in light of clearly established law. *See Hope*, 536 U.S. 739. *Goodson* and *Trammell* both involved facts in which a detainee attempted to free himself after a police officer suddenly grabbed the detainee's arm. *Goodson*, 202 F.3d at 733–34; *Trammell*, 868 F.3d at 337. And they both held that acts of minor resistance such as this do not justify a disproportionate use of force by the officer. *Goodson*, 202 F.3d at 740; *Trammell*, 868 F.3d at 343. True, Peña is not alleged to have tackled the detainee—i.e., Campbell—like the officers and *Goodson* and *Trammell* were alleged to have done. *Compare* Doc. 1-3, Pet., ¶ 14, *with Goodson*, 202 F.3d at 740, *and Trammell*, 868 F.3d at 343 "But it is not necessary that a previous case presenting identical facts exist in order for a right to be clearly established." *Aguirre*, 995 F.3d at 415. "The central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Ramirez*, 716 F.3d at 379 (5th Cir. 2013) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir.2004) (en banc)). Here, Peña had fair warning that slamming or forcing a subdued detainee's person down (whether onto the ground or into a chair) with such

a degree of force as to cause major injuries was prohibited by clearly established law, notwithstanding the fact that the detainee attempted to remove himself from the officer's grasp. *See Goodson*, 202 F.3d at 740; *Trammell*, 868 F.3d at 343. This is sufficient to overcome the defense of qualified immunity. *See Polnac*, 555 F. Supp. 3d at 329–30.

In sum, reading the Petition liberally and taking the facts alleged therein as true, the Court concludes that Campbell plausibly established that Peña violated clearly established law. Thus, Peña is not entitled to dismissal at the 12(b)(6) stage on qualified immunity grounds.[6] As such, the Court **DENIES** the City Defendants' Motion with respect to Campbell's § 1983 claim against Peña.

## IV.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** the City Defendants' Motion (Doc. 5). The Motion is **GRANTED** as to Campbell's claims against Cedar Hill. The Court **DISMISSES WITH PREJUDICE** Campbell's respondeat superior claim against Cedar Hill. The Court **DISMISSES WITHOUT PREJUDICE** Campbell's negligence and § 1983 claim against Cedar Hill. The City Defendants' Motion is **DENIED** with respect to Campbell's § 1983 claim against Peña. Should Campbell elect to file an amended complaint, he must do so within **twenty-one (21)** days of the date of this Order.

---

[6] Of course, if discovery yields evidence demonstrating that the facts are other than what Campbell has alleged in his Petition, dismissal on qualified immunity grounds may well be appropriate at a later stage. The Court expresses no opinion on the matter.

SO ORDERED.

SIGNED: August 15, 2024.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE