UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TWANN CAMPBELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-2232-B |
| | § | |
| JOSUE F. PEÑA, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendant Josue F. Peña's Motion for Summary Judgment (Doc. 32) and Plaintiff Twann Campbell's Cross-Motion for Summary Judgment (Doc. 35). For the following reasons, the Court **GRANTS** Peña's Motion. Campbell's Cross-Motion is **DENIED**.

### I.

### BACKGROUND

This is a civil rights action brought under 42 U.S.C. § 1983. Campbell claims that Peña, a police officer for the city of Cedar Hill, Texas, used excessive force against him in violation of the Fourth Amendment of the United States Constitution. Peña claims he is entitled to qualified immunity.

The facts presented are largely undisputed. Peña initiated a traffic stop against Campbell on the basis of an expired vehicle registration. Observing an open cocktail in the cup holder, Peña initiated a field sobriety test. Campbell failed the field sobriety test. Accordingly, Peña took Campbell into custody and transported him to the Charlton Methodist Hospital (the "Hospital")

for a blood-alcohol test.[1] *See* Doc. 36, Pl.'s Cross-Mot. Br., 13; Doc. 33, Peña Mot. Br., 7.[2]

While at the Hospital, Peña ordered Campbell to sit down in a chair so Hospital staff could conduct the blood draw. When Campbell refused to sit, Peña and Martinez (a peace officer stationed at the Hospital) attempted to physically force him to sit down. After Peña and Martinez initially succeeded in getting Campbell to sit in the chair, he stood up again, and they had to force him down a second time. Campbell claims that on the second attempt to get him to sit, the force seriously injured his knee. *See* Doc. 36, Pl.'s Cross-Mot. Br., 14; Doc. 33, Peña Mot. Br., 8-9.[3]

Video evidence, taken from Peña's bodycam footage, documents the incident in full. Two minutes into the video, Campbell is seen entering a room[4] in the Hospital for a blood draw. Doc. 36, Pl.'s Cross-Mot. Br., Ex. A, 02:42. Peña then tells Campbell to sit in a particular chair to the side of the room, and Campbell refuses, stating, "I'm good, I'll stand." *Id.* at 02:48-02:50. Four seconds later, Peña repeats his command for Campbell to sit, and Campbell again refuses, stating, "I'll stand, please." *Id.* at 02:52-02:58. Nine seconds later, Peña repeats his command a third time, and Campbell again refuses with the same response. *Id.* at 03:01. Peña then explains to Campbell that he needs to sit because "they got a lot of people coming and going," but Campbell again refuses. *Id.* at 03:03-03:05. Eight seconds later, Peña asks Campbell to sit for a fifth time, and Campbell—now

---

[1] While Campbell initially consented to the blood draw, Campbell withdrew his consent for the test upon arrival at the Hospital. Peña then transported Campbell to the Cedar Hill Police Department to get a warrant for the blood draw. They returned to the Hospital once the warrant was obtained. Doc. 36, Pl.'s Cross-Mot. Br., 13-14; Doc. 33, Peña Mot. Br., 7-8.

[2] The Court's citations to the parties' briefs utilize page numbers as set by the ECF docketing system, not the page numbers on the briefs themselves.

[3] While the parties dispute the injury's cause, the Court assumes that Peña's force did in fact cause the injury, because even with that assumption, Campbell's excessive force claim cannot survive summary judgment.

[4] The room in question appears to adjoin other, larger rooms—acting as a hallway through which multiple individuals are seen passing throughout the duration of the video. Doc. 36, Pl.'s Cross-Mot. Br., Ex. A, 02:42-04:09.

in an agitated tone—again refuses. *Id.* at 03:13-03:15. Peña then tells Campbell that he is not permitted to stand, and for the sixth time, Peña asks Campbell to sit. *Id.* at 03:17. Six seconds later, Campbell states "how am I gonna sit down I got these cuffs," to which Peña responds "the same way you were sitting in my car." *Id.* at 03:23-03:25. Campbell then says "take these cuffs off and I'll sit down," to which Peña responds "it ain't coming off." *Id.* at 03:29-03:30. Campbell again declines to sit, for the seventh time in forty seconds. *See id.* at 03:31-03:33.

Only then, after seven explicit refusals, does Peña use any force. Two seconds after Campbell's seventh refusal to obey a command, Peña is seen taking Campbell's arm in both hands, just above the elbow, to guide him down into the seat. *Id.* at 03:35. In response, Campbell takes an abrupt step away from the chair and the two officers, and he yells "get your f[]ing hands off of me." *Id.* at 03:36-03:38. Peña and Martinez then—pulling on Campbell's arm and pushing on his shoulder—force him down into the chair, to which Campbell responds, "this is what we're doing now?" *Id.* at 03:40-03:42. Peña and Martinez then remove their hands from Campbell's shoulders while he briefly remains seated in the chair. *Id.* at 03:46. Campbell then states, after refusing Peña's direct commands at least seven times and physically resisting, "I have been nothing but cooperative throughout this entire process." *Id.* at 03:45-03:49. Campbell then abruptly returns to his feet, and Peña and Officer Martinez can be seen again pulling on his arms and pushing on his shoulders to get him back into the chair as he resists. *Id.* at 03:50-03:55. As Peña and Martinez get Campbell back into the chair, Campbell suddenly yells out and says "you just did something to my knee man." *Id.* at 03:55-04:03. Peña responds, "I didn't touch your knee," and Campbell clarifies "no, something just happened to my knee man." *Id.* at 04:05-04:08. Peña then responds "ok, we'll get it checked out." *Id.* at 04:09-04:11.

Campbell brought suit in October 2023, against a variety of individuals and entities, alleging negligence and violations of his Fourth Amendment rights to be free from excessive force. Doc. 1-3, Pet., 6-7. Campbell's claims against most Defendants have since been settled or dismissed, and the sole cause of action remaining is Campbell's § 1983 claim against Peña.[5] Peña now moves for summary judgment and asserts the defense of qualified immunity. Doc. 33, Peña Mot. Br., 7. In response, Campbell brings a cross-motion for summary judgment, asserting that Peña is not entitled to qualified immunity, and that Campbell is instead entitled to judgment in his favor as to the determination that Peña used excessive force. Doc. 35, Pl.'s Cross-Mot., 2. The Court considers the Motions below.

## II.

## LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). On a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d

---

[5] In Campbell's Brief in support of his Cross-Motion for Summary Judgment, Campbell states for the first time that there is a second § 1983 claim that he could assert due to events occurring after the alleged knee injury, and that he would at some future time petition the Court to amend his pleadings. *See* Doc. 36, Pl.'s Mot. Br., 14-15. At this late stage, the Court will not consider Campbell's unasserted claim. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (finding district court properly ignored § 1983 claim raised for the first time in the plaintiff's response motion for summary judgment). Nor will the Court grant Campbell leave to amend his pleading. Campbell filed his Petition in October 2023, *see generally* Doc. 1-3, Pet., and the deadline to amend pleadings was on May 1, 2025, *see* Doc. 20, Scheduling Order, 1.

984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

When qualified immunity has been raised, "[t]he moving party is not required to meet its summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (citation omitted). Rather, the movant need only plead his good-faith entitlement to qualified immunity, whereupon "the burden shifts to the plaintiff to rebut it." *Id.* (emphasis and citation omitted).

A district court may not grant summary judgment based on qualified immunity "[i]f resolution of [qualified immunity] . . . turns on what the defendant actually did, rather than on whether the defendant is immunized from liability" and the plaintiff's version of the story would defeat the qualified-immunity defense. *See Haverda v. Hays Cnty.*, 723 F.3d 586, 599 (5th Cir. 2013) (citation omitted). When videotape evidence is available, a court is not required to adopt the plaintiff's version of facts if the plaintiff's story "is blatantly contradicted by the [video] record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) ("[A]lthough courts view evidence in the light most favorable to the nonmoving party, they give greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." (citing *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011))).

## III.

## ANALYSIS

The Court **GRANTS** summary judgment in favor of Peña because there is no genuine dispute of material fact that he is entitled to qualified immunity as a matter of law.

The doctrine of qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In reviewing a motion for summary judgment based on qualified immunity, courts undertake a two-step analysis. "First, we ask whether the facts, taken in the light most favorable to the plaintiffs, show the officer's conduct violated a federal constitutional or statutory right." *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (citations omitted), *rev'd on other grounds*, 577 U.S. 7 (2015). "Second, we ask whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (internal quotations omitted) (citation omitted). "Courts have discretion to decide which prong of the qualified immunity analysis to address first." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011). Here, because the Court finds Peña's conduct did not violate a constitutional right, the Court addresses only step one.

A.  *Peña Did Not Use Unreasonably Excessive Force as Campbell was Plainly Uncooperative*

Based on the undisputed facts and video evidence presented to the Court, Peña's use of force was not excessive. When a police officer uses excessive force, he violates the Fourth Amendment of the Constitution, which prohibits the "unreasonable seizures of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "To prevail on an excessive force claim, a plaintiff must show (1) an injury (2) which resulted directly and only from the use of force that was *clearly excessive*, and (3) the excessiveness of which was *clearly unreasonable*." *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016)

(citation modified). The mere fact that an injury occurred during an altercation does not make an action clearly excessive or clearly unreasonable. *See id.*

The clearly excessive and clearly unreasonable elements are often collapsed "into a single objective-reasonableness inquiry" that is fact intensive and guided by a non-exclusive list of factors known as the "*Graham* factors." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (citing *Graham*, 490 U.S. at 396). The *Graham* factors require consideration of circumstances such as (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Galvan v. City of San Antonio*, 435 F. App'x 309, 310-11 (5th Cir. 2010) (per curiam) (internal quotation marks omitted).

"When dealing with an uncooperative suspect, police act within the scope of objective reasonableness when they 'react[ ] with measured and ascending responses.'" *Orr*, 844 F.3d at 493 (citing *Galvan*, 435 F. App'x at 311). At least some physical force is justified in response to "a suspect's refusal to comply with instructions." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). "An arrestee who is 'restrained and subdued' is not actively resisting." *Anderson v. Estrada*, 140 F.4th 634, 645 (5th Cir. 2025) (citing *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)). "But those characteristics of passive resistance are conjunctive: *that a suspect is handcuffed does not end the inquiry*." *Id.* (emphasis added). Thus, even while handcuffed, an arrestee that continues to ignore an officer's command is actively resisting. *See id.*

Turning to the three elements for an excessive force claim, the Court assumes without deciding that there was an injury. *See Orr*, 844 F.3d at 492 (requiring an injury). However, the fact of injury does not in and of itself make Peña's force "clearly unreasonable" or "clearly excessive" as

is necessary under the second and third factors. *Id.* at 492. Thus, the Court independently considers the second and third elements—whether the force was clearly excessive and clearly unreasonable—together in an objective-reasonableness inquiry. *See id.*; *Galvan*, 435 F. App'x at 310-11.

      Peña's use of force was objectively reasonable based on application of the three *Graham* factors. First, the Fifth Circuit has found driving while intoxicated ("DWI") is a serious crime. *Cooper v. Brown*, 844 F.3d 517, 523 (5th Cir. 2016). It is undisputed that Campbell was arrested after failing a field sobriety test and brought to the hospital for a blood alcohol test. *See* Doc. 36, Pl.'s Cross-Mot. Br., 10. Thus, the first factor weighs against Campbell.

      Second, a reasonable officer would perceive Campbell as a threat to the safety of others. Upon being ordered to sit down, Campbell became agitated and refused Peña's direct commands. Video evidence shows that the hospital—including the location of the chair—was busy with staff and patients. *See* Doc. 36, Pl.'s Cross-Mot. Br., Ex. A, 02:48-03:33. Furthermore, even with his handcuffs fastened, Campbell was plainly able and willing to physically resist, stand back up, and move away from the officers. *See id.* at 03:36-03:55.

      Third, the Court finds that as a matter of undisputed material fact, Campbell was actively resisting Peña both verbally and physically. The final *Graham* factor "concerns the degree of resistance to the officer's *objective*." *See Anderson*, 140 F.4th at 645 (emphasis in original). The video evidence shows Campbell verbally refused Peña's commands to sit down at least seven times. *See* Doc. 36, Pl.'s Cross-Mot. Br., Ex. A, 02:48-03:33. Peña told Campbell, "sit, they have a lot of people coming and going" while pointing at various people walking by in the hospital. *Id.* at 03:00-03:05. Campbell then physically resisted, both when he stepped away from Peña and when he stood back up after initially being pulled down into the chair. *Id.* at 03:36-03:55. The fact that Campbell was

handcuffed during his resistance does not change the analysis. *See Anderson*, 140 F.4th at 645. Therefore, all three *Graham* factors suggest that it was objectively reasonable for Peña to use some level of force against Campbell.

Moreover, because Campbell was actively resisting, the objective reasonableness inquiry turns on whether Peña acted "with measured and ascending responses" to Campbell's resistance. *See Orr*, 844 F.3d at 493 (citation omitted). Peña did not use any physical force to obtain Campbell's compliance until *after* commanding Campbell to sit in the chair seven separate times. *See* Doc. 36, Pl.'s Cross-Mot. Br., Ex. A, 02:48-03:35. Then, when Campbell did resort to force, he placed both hands above Campbell's elbow to pull him toward the chair. *Id.* at 03:35. Only when Campbell began to physically resist did Peña pull harder on Campbell's arm and place a hand on Campbell's shoulder to push him into the chair. *Id.* at 03:40-03:42. Then, when Campbell stood up again and continued to physically resist, Peña again—in the same method as before—used some force to pull Campbell back into the chair. *Id.* at 03:50-03:55. Because Peña repeatedly attempted to obtain Campbell's compliance without any physical force, then resorted to minimal force[6] only when those efforts failed to get Campbell into the chair, he acted "with measured and ascending responses" to Campbell's resistance. *See Orr*, 844 F.3d at 493.

Because Peña's use of force was neither clearly excessive nor clearly unreasonable, Campbell cannot establish a violation of his constitutional rights. And because Campbell cannot establish a violation, he cannot meet his burden at summary judgment to rebut Peña's entitlement to qualified

---

[6] It would not be reasonable, based on video evidence, to characterize the officers' use of force as more than minimal. No one claims that Peña, or Martinez, made any contact with Campbell's knee or leg. Nor is it obvious that the force used would normally or expectedly result in a serious knee injury. From the available video evidence, Campbell's alleged injury looks more like it would have been a "freak accident" than an intended or even probable result of pulling or pushing a handcuffed individual down into a regular chair.

immunity. *See Hathaway*, 507 F.3d at 319. Therefore, the Court **GRANTS** summary judgment for Peña on Campbell's **§** 1983 claim.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Peña's Motion for Summary Judgment (Doc. 32) and **DENIES** Campbell's Cross-Motion for Summary Judgment (Doc. 35).

**SO ORDERED.**

**SIGNED: December 11, 2025.**

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE